IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

DARREN MIYASATO,            ) CIVIL NO. 11-00716 JMS-KSC
individually and on behalf )
of all others similarly    ) FINDINGS AND
situated,                  ) RECOMMENDATION TO DENY
                           ) PLAINTIFF DARREN
        Plaintiff,         ) MIYASATO'S MOTION FOR
                           ) REMAND
    vs.                    )
                           )
HYATT CORPORATION; GOLDMAN )
SACHS & CO.; DOE DEFENDANTS )
1-50,                      )
                           )
        Defendants.        )
_____ )

FINDINGS AND RECOMMENDATION TO DENY
PLAINTIFF DARREN MIYASATO'S MOTION FOR REMAND

        Before the Court is Plaintiff Darren Miyasato's

("Plaintiff") Motion for Remand ("Motion"), filed

December 30, 2011.  Defendant Hyatt Corporation

("Hyatt") filed an Opposition on January 25, 2012.

Plaintiff filed a Reply on February 1, 2012.

        This matter came on for hearing on February 15,

2012.  John Perkin, Esq., and Brandee Faria, Esq.,

appeared on behalf of Plaintiff and Jay Handlin, Esq.,

appeared on behalf of Hyatt.  After careful

consideration of the Motion, the supporting and

opposing memoranda, the arguments of counsel, and the applicable law, the Court HEREBY FINDS AND RECOMMENDS that the Motion be DENIED for the reasons set forth below.

<u>BACKGROUND</u>

On October 26, 2011, Plaintiff filed a Complaint in the Circuit Court of the First Circuit, State of Hawaii. He alleges that between 2002 and 2008, Defendants' practice of imposing a service charge and retaining a portion of the service charge without clearly disclosing the retention to the customer was and is a violation of Hawaii Revised Statutes ("HRS") § 481B-14, and in turn, HRS § 388-6. Notice of Removal, Ex. 1 at ¶ 15. Plaintiff asserts that absent the required disclosure to customers, all service charges were payable to the employees who rendered the services. Plaintiff further alleges that "the wrongfully withheld service charges for DARREN MIYASATO are estimated to be less than $75,000, however, the aggregate of the claims for all putative class members is as yet unknown. By virtue of the foregoing,

Plaintiff DARREN MIYASATO, and other members of the proposed class are entitled to treble damages in accordance with HRS Section 480-13(a)." Id. at ¶ 20. Plaintiff prays for damages in an amount to be determined at trial; for costs and expenses, including attorneys' fees in accordance with HRS Chapters 388 and 480; prejudgment interest; double or treble damages; and declaratory judgment and a permanent injunction. Id. at ¶ 21.

On November 30, 2011, Hyatt, with no objection from Defendant Goldman Sachs, removed the action to this Court on the basis that the amount in controversy exceeds $75,000, and the action is between citizens of different states. Notice of Removal at ¶¶ 4, 15. The instant Motion followed.

## DISCUSSION

Hyatt removed the instant case pursuant to 28 U.S.C. §§ 1441 and 1332. Notice of Removal at 2 and ¶ 4. Section 1441 provides:

> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have

original jurisdiction, may be removed by
the defendant or the defendants, to the
district court of the United States for
the district and division embracing the
place where such action is pending. For
purposes of removal under this chapter,
the citizenship of defendants sued under
fictitious names shall be disregarded.

(b) Any civil action of which the district
courts have original jurisdiction founded
on a claim or right arising under the
Constitution, treaties or laws of the
United States shall be removable without
regard to the citizenship or residence of
the parties. Any other such action shall
be removable only if none of the parties
in interest properly joined and served as
defendants is a citizen of the State in
which such action is brought.

28 U.S.C. § 1441. Section 1441 is strictly construed

against removal and courts resolve any doubts about the

propriety of removal in favor of remanding the case to

state court. See Durham v. Lockheed Martin Corp., 445

F.3d 1247, 1252 (9th Cir. 2006). The party seeking to

remove the case bears the burden of establishing the

existence of federal jurisdiction. See California ex

rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th

Cir. 2004), cert. denied, 544 U.S. 974 (2005).

A.  Diversity of Citizenship

Hyatt removed the case based on diversity jurisdiction because it is a Delaware corporation with its principal place of business in Illinois, Goldman Sachs is a Delaware corporation with its principal place of business in New York, Plaintiff is a resident of Hawaii, and the amount in controversy exceeds $75,000.  Notice of Removal at ¶¶ 4-6.  Federal district courts have original jurisdiction over cases where the amount in controversy exceeds $75,000, exclusive of interest and costs, and where the matter in controversy is between citizens of different states.  See 28 U.S.C. § 1332(a)(1).  A defendant may remove such an action to federal court provided that no defendant is a citizen of the same state in which the action was brought.  See 28 U.S.C. § 1441(b).  Currently at issue is whether the amount in controversy exceeds $75,000, and whether the preponderance of the evidence or legal certainty standard applies.

1.  Citizenship

Although the parties do not dispute the

5

complete diversity of the parties, the Court must note that the Notice of Removal is defective in that it fails to allege Plaintiff's *citizenship*. It is well-established that "the diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of citizenship, not of residency." Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). State citizenship is determined by the state of domicile, not the state of residence. "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return. A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." Id. (citations omitted). A corporation is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." Lincoln Prop. Co. v. Roche, 546 U.S. 81, 94 (2005) (citation and quotation omitted); 28 U.S.C. § 1332(c)(1).

The Complaint states that Plaintiff is a resident of the State of Hawaii and the Notice of

Removal states likewise.  Notice of Removal at ¶ 5; id., Ex. 1 at ¶ 1.  "Absent unusual circumstances, a party seeking to invoke diversity jurisdiction should be able to allege affirmatively the actual citizenship of the relevant parties."  Kanter, 265 F.3d at 857 (citing Whitmire v. Victus Ltd. t/a Master Design Furniture, 212 F.3d 885, 887 (5th Cir. 2000)).  Hyatt's failure to specify Plaintiff's *citizenship* in the Notice is fatal to its assertion of diversity jurisdiction.  Id. at 858.

Hyatt may cure this defect, however, by amending its Notice of Removal.  Section 1653 of Title 28 of the United States Code provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial . . . courts."  28 U.S.C. § 1653; see also Kanter, 265 F.3d at 858.  This section applies to both removed actions and to those initiated in United States district courts.  Barrow Dev. Co. v. Fulton Ins. Co., 418 F.2d 316, 317 (9th Cir. 1969) (citations omitted).  Ordinarily, "the notice of removal required by Section 1446(b) may be amended freely by the defendant prior to

the expiration of the thirty-day period for seeking removal." 14C Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Pocket Part by The Late Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Joan E. Steinman, Federal Practice and Procedure § 3733. After the thirty-day period for seeking removal has passed, "the notice may be amended only to set out more specifically the grounds for removal that already have been stated, albeit imperfectly, in the original notice." Id.; see also Barrow, 418 F.2d at 317 (after thirty-day period lapses, the defendant may not amend a notice of removal "to add allegations of substance but solely to clarify 'defective' allegations of jurisdiction previously made"). Although the thirty-day period for seeking removal has expired in this case, any amendment by Hyatt to clarify the citizenship of the parties is permissible. See, e.g., Barrow, 418 F.2d at 318 (deficiencies in allegations of citizenship may be amended because they are lacking in form, not substance).

Insofar as the parties do not dispute that they are completely diverse, and Hyatt's failure to allege Plaintiff's citizenship can be corrected by amendment, the Court finds that this action is between parties of different states, and Defendants are not citizens of the State of Hawaii.

2.  Amount in Controversy

a.  Applicable Legal Standard

Assuming that Hyatt amends the Notice to properly allege Plaintiff's citizenship, the Court must still determine whether the amount in controversy exceeds $75,000.  Plaintiff argues that Hyatt must prove to a legal certainty that the amount in controversy exceeds $75,000 because he expressly avers damages less than $75,000.  Hyatt contends that it need only establish that the amount in controversy exceeds $75,000 by a preponderance of the evidence because the Complaint does not contain an express allegation that Plaintiff seeks less than $75,000.

To start, the Court considers "whether it is 'facially apparent' from the complaint that the

jurisdictional amount is in controversy." Lowdermilk
v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 998 (9th Cir.
2007) (quotations and citations omitted).  When "it is
not facially evident from the complaint that more than
$75,000 is in controversy," a defendant must prove, by
a preponderance of the evidence, that the amount in
controversy exceeds $75,000.  Matheson v. Progressive
Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir.
2003).  In other words, a defendant must prove that it
is "more likely than not" that the amount in
controversy exceeds $75,000.  Sanchez v. Monumental
Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).  This
"burden is not 'daunting,' as courts recognize that
under this standard, a removing defendant is not
obligated to 'research, state, and prove the
plaintiff's claims for damages.'"  Korn v. Polo Ralph
Lauren Corp., 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal.
2008) (quoting McCraw v. Lyons, 863 F. Supp. 430, 434
(W.D. Ky. 1994)).

By contrast, when a state court complaint
affirmatively alleges that the amount in controversy is

less than the jurisdictional threshold, the party seeking removal must prove with legal certainty that the amount in controversy exceeds the jurisdictional threshold. <u>Lowdermilk</u>, 479 F.3d at 998-99;[1] <u>Guglielmino v. McKee Foods Corp.</u>, 506 F.3d 696, 698 (9th Cir. 2007). The Ninth Circuit endorses "the Fifth Circuit's practice of considering facts presented in the removal petition as well as any 'summary-judgement-type evidence relevant to the amount in controversy at the time of removal.'" <u>Matheson</u>, 319 F.3d at 1090; <u>Kroske v. U.S. Bank Corp.</u>, 432 F.3d 976, 980 (9th Cir. 2005). Conclusory allegations regarding the amount in controversy are insufficient. <u>Matheson</u>, 319 F.3d at 1090-91.

When assessing "the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the

---

[1] Although <u>Lowdermilk v. U.S. Bank National Association</u> involves the Class Action Fairness Act, its application is not limited to class actions. <u>Roe v. Teletech Customer Care Mgmt, LLC</u>, No. C07-5149 RBL, 2007 WL 1655172, *1, *3 n.1 (W.D. Wash. June 6, 2007); <u>Sylvester v. Menu Foods, Inc.</u>, Civ. No. 07-00409 ACK-KSC, 2007 WL 4291024, at *4 (D. Haw. Dec. 5, 2007).

plaintiff on all claims made in the complaint." Korn,
536 F. Supp. 2d at 1205 (citing Kenneth Rothschild
Trust v. Morgan Stanley Dean Witter, 199 F. Supp. 2d
993, 1001 (C.D. Cal. 2002)).  It is the amount placed
"in controversy" by a plaintiff's complaint that is the
ultimate inquiry, not what a defendant will actually
owe.  Id. (citing Rippee v. Boston Market Corp., 408 F.
Supp. 2d 982, 986 (S.D. Cal. 2005)).

Plaintiff attempts to draw comparisons between
this case and Lowdermilk, in arguing that the legal
certainty test applies.  The Court is not persuaded.
The plaintiff in Lowdermilk sought damages, penalty
wages, costs, attorneys' fees and interest in her
prayer for relief and alleged that they totaled less
than $5 million.  Lowdermilk, 479 F.3d at 996.  The
plaintiff further alleged that the aggregate total of
the claims pled did not exceed $5 million.  Id.

Here, the only monetary value discussed in the
Complaint is Plaintiff's allegation that "the
**wrongfully withheld service charges** for DARREN MIYASATO
**are estimated to be less than $75,000**, however, the

aggregate of the claims for all putative class members is as yet unknown." Notice of Removal, Ex. 1 at ¶ 20 (emphases added). Plaintiff further alleges that he and "other members of the proposed class are entitled to treble damages in accordance with HRS Section 480-13(a)." Id. Plaintiff does not include a total dollar amount in controversy in his prayer for relief, but requests damages in an amount to be determined at trial; costs and expenses, including attorneys' fees in accordance with HRS Chapters 388 and 480; prejudgment interest; double or treble damages; and declaratory judgment and a permanent injunction. Id. at ¶ 21. Thus, Plaintiff has not, as he claims, expressly averred damages less than $75,000. The $75,000 reference concerns wrongfully withheld service charges, not the total amount in controversy, and Plaintiff additionally asserts an entitlement to treble damages.

Interestingly, while asserting that he avers damages less than $75,000, Plaintiff concedes that the terms of the relevant paragraphs in the Complaint are not clear. This concession notwithstanding, Plaintiff

submits that "the import of the paragraph as a whole is
clearly to allege that Miyasato's damages do not meet
the threshold for removal." Reply at 3. Plaintiff
submits that his counsel will affirm that this was
their intent and that the Court may take their
statements into account in assessing whether the legal
certainty test applies. Id. Plaintiff's reliance on
Lowdermilk for this proposition is misplaced. The
Lowdermilk court noted that Plaintiff's counsel
repeatedly stated at oral argument that the total sum
of damages sought, including attorneys' fees and costs,
did not exceed $5 million. Lowdermilk, 479 F.3d at
1003. However, it was not counsel's statement at oral
argument that persuaded the court that the legal
certainty standard should apply. Instead, the
Lowdermilk court found that the plaintiff pled a
specific amount of damages in the complaint by alleging
that all damages, penalty wages, costs, attorneys'
fees, and interest amounted to less than $5 million.
Id. at 996-98.

Contrastingly, the Court is here presented with a situation where the Complaint says one thing, but Plaintiff wishes for the Court to accept statements/representations of clarification to allow for a more favorable reading of the allegations in the Complaint. The Court declines to do so. "[J]urisdiction must be analyzed on the basis of the pleadings filed at the time of removal without reference to subsequent amendments." Sparta v. Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc., 159 F.3d 1209, 1213 (9th Cir. 1998); Spencer v. U.S. Dist. for the N. Dist. of Cal., 393 F.3d 867, 871 (9th Cir. 2004) ("Challenges to removal jurisdiction require an inquiry into the circumstances at the time the notice of removal is filed."). The fact that Plaintiff feels compelled to clarify his allegations demonstrates that he has not sufficiently specified the amount in controversy.

In view of the foregoing, the Court agrees with Hyatt that this case is analogous to Guglielmino v. McKee Foods Corp. Under nearly identical

circumstances, the Guglielmino court found that because the complaint there failed "to allege a sufficiently specific total amount in controversy,"the preponderance of the evidence standard applied.  Guglielmino, 506 F.3d at 701.  Even if the Court accepts that Plaintiff's damages, doubled or trebled, and prejudgment interest amount to less than $75,000, Plaintiff also seeks attorneys' fees and costs pursuant to HRS Chapters 388 and 480.  "Section 1332(a)'s amount-in-controversy requirement excludes only 'interest and costs' and therefore includes attorneys' fees."  Id. at 700; Lowdermilk, 479 F.3d at 1000 (quoting Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1155-56 (9th Cir. 1998)) (attorneys' fees may be included in the amount in controversy when an underlying statute authorizes an award of fees). Insofar as HRS §§ 388-11[2] and 480-13[3] authorize an award

---

[2]  HRS § 388-11(c) provides:

> The court in any action brought under this
> section shall, in addition to any judgment
> awarded to the plaintiff or plaintiffs,
> allow interest of six per cent per year
> from the date the wages were due, costs of

16

of attorneys' fees for a prevailing plaintiff,

attorneys' fees must be included in the amount in

controversy.  <u>Lowdermilk</u>, 479 F.3d at 1000.

-----

> action, including costs of fees of any
> nature, and reasonable attorney's fees, to
> be paid by the defendant.

Haw. Rev. Stat. § 388-11(c).

[3]  HRS § 480-13(a) provides:

> (a) Except as provided in subsections (b)
> and (c), any person who is injured in the
> person's business or property by reason of
> anything forbidden or declared unlawful by
> this chapter:
>
> (1) May sue for damages sustained by the
> person, and, if the judgment is for the
> plaintiff, the plaintiff shall be awarded
> a sum not less than $1,000 or threefold
> damages by the plaintiff sustained,
> whichever sum is the greater, and
> reasonable attorney's fees together with
> the costs of suit; provided that indirect
> purchasers injured by an illegal
> overcharge shall recover only compensatory
> damages, and reasonable attorney's fees
> together with the costs of suit in actions
> not brought under section 480-14(c); and
>
> (2) May bring proceedings to enjoin the
> unlawful practices, and if the decree is
> for the plaintiff, the plaintiff shall be
> awarded reasonable attorney's fees
> together with the costs of suit.

Haw. Rev. Stat. § 480-13(a).

As with the Guglielmino court, this Court finds that the Complaint does not allege a sufficiently specific total amount in controversy. The Court therefore concludes that Hyatt must prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.

   b.   Calculation of Amount in Controversy

      i.   Damages

Plaintiff alleges that Hyatt gave nonmanagerial employees approximately 75% of the service charge imposed on customers and improperly withheld approximately 25% of said service charge.[4] Notice of Removal, Ex. 1 at ¶ 14. Hyatt represents that its records reflect that Plaintiff received approximately

_____

      [4] Plaintiff accuses Hyatt of misrepresenting the allegations in the Complaint. Plaintiff denies claiming that Defendants retained approximately one-fourth of the service charges owed to him. However, the Complaint plainly states that "Defendants failed to distribute all of the service charge to the non-managerial employees who provided the service of the food and beverage to the customers, including Plaintiff DARREN MIYASATO, and all other members of the proposed Class, retaining 5% of the 15% or 6% of the 22% (i.e. approximately 1/4 of the service charge)." Notice of Removal, Ex. 1 at ¶ 14.

18

$119,000 in service charges collected between 2002 and the pay period ending November 19, 2011. Notice of Removal at ¶ 12. Hyatt multiplies this total by 25%, which it asserts is the amount Plaintiff claims he is owed, to arrive at a total of $29,750 in damages. Id. Hyatt argues that the $29,750 trebled results in an amount in controversy of approximately $89,250. Id. In its Opposition, Hyatt notes that this formula is actually more favorable than the formula that should apply. Because Plaintiff alleges that Hyatt retained 25% of the charges that it should have distributed to him, Hyatt proffers that the $119,000 should represent 75% of the amount that it should have distributed to Plaintiff. Under this formula, Plaintiff's single damages are approximately $39,660, or $79,320 doubled or $118,980 trebled.

Plaintiff takes issue with the fact that Hyatt has changed its formula, and also challenges the time period upon which Hyatt bases its calculations, given the applicable statutes of limitations. These arguments are without merit. The formula applied in

the Opposition is actually more consistent with
Plaintiff's allegations than the formula presented in
the Notice of Removal.  Plaintiff alleges that he
received 75% of the service charge collected, and that
Hyatt improperly withheld 25% of the service charge.
Thus, the $119,000 that Plaintiff received from 2002 to
2011 would in fact represent 75% of his share of the
service charge.  The 25% withheld service charge should
not be calculated from the $119,000, but rather, from
the total service charge collected.  Plaintiff attempts
to refute Defendant's calculations with speculation and
conjecture about how much he would actually be able to
recover.  The Court declines to engage in a discussion
about all possible scenarios of service charge
distribution as pertaining to Plaintiff.  Indeed,
Plaintiff's argument that he "could be awarded less
than the maximum statutory penalty . . . overlooks the
critical distinction between the likely recovery . . .
and the actual issue before the court, the amount in
controversy in this litigation."  Korn, 536 F. Supp. 2d
at 1205 (citing Brill v. Countrywide Home Loans, Inc.,

427 F.3d 446, 448 (7th Cir. 2005) ("The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties.")).

With respect to Plaintiff's statute of limitations argument, it is Plaintiff, not Hyatt, who placed the very time period he now contests at issue. The Court will not, in connection with this Motion, make a dispositive determination about whether Plaintiff is barred from recovering damages for specific years identified in the Complaint, nor shall the Court impose upon Hyatt the burden of proving an affirmative defense at this preliminary stage in the litigation.  This is because the Court assumes that the allegations of the complaint are true and that a jury will return a verdict for Plaintiff on all claims in the Complaint.  Id.  As earlier noted, the Court's inquiry focuses on the amount placed in controversy by Plaintiff's Complaint, not what Plaintiff will ultimately recover.  Id.

Based on the current record, the Court concludes that Hyatt has demonstrated, by a

preponderance of the evidence, that the amount in controversy is approximately $79,320 to $118,980.

## ii. <u>Trebling of Damages</u>

Although Plaintiff alleges an entitlement to treble damages in the Complaint, and prays for the same, he now takes the stance that his entitlement is not clear and that he might prevail, but might only recover single or double damages. The Court shall consider the possibility that Plaintiff's damages may be trebled, given the allegations in the Complaint. Again, the Court assesses the amount that Plaintiff has placed in controversy, not his ultimate recovery. Even if damages were only doubled, Hyatt has successfully demonstrated, by a preponderance of the evidence, i.e. more likely than not, that the amount in controversy exceeds $75,000.

## iii. <u>Attorneys' Fees</u>

Finally, Plaintiff contends that his prayer for attorneys' fees should not be included in the amount in controversy because Hyatt has not provided factual support to allow for a reasoned calculation of the fees

at issue.[5]  Hyatt counters that fees may be considered when determining the amount in controversy.  Hyatt has not placed a monetary value on the attorneys' fees it seeks to include as part of the amount in controversy, but submits that it has demonstrated that the amount in controversy has been met, exclusive of attorneys' fees, costs, and interest.

The Court has already determined that Hyatt has shown, by a preponderance of the evidence, that the amount in controversy exceeds $75,000 based on doubled or trebled damages.  Thus, the fact that Hyatt has not provided a monetary value for attorneys' fees and costs is of no consequence.  However, the Court notes that while it would be Hyatt's burden to provide information that would allow for a reasoned calculation of

---

[5]  At the hearing, Plaintiff's counsel argued that the Court has yet to calculate fees.  If the absence of an award of fees could justify the omission of attorneys' fees in the amount in controversy calculation, a court could never consider attorneys' fees in calculating the amount in controversy because attorneys' fees awards are typically decided post-judgment.  This reasoning runs afoul of established and binding precedent authorizing the Court to include attorneys' fees in the amount in controversy.

attorneys' fees and costs, a removing defendant's failure to do so would not alter the general rule that courts may include attorneys' fees in the calculation of the amount in controversy.

<u>CONCLUSION</u>

Insofar as the parties are completely diverse and Hyatt has established, by a preponderance of the evidence, that the amount in controversy exceeds $75,000, the Court FINDS that diversity jurisdiction exists and accordingly RECOMMENDS that Plaintiff's Motion for Remand, filed December 30, 2011, be DENIED. As discussed in this Findings and Recommendation, Hyatt is to amend its Notice of Removal to properly allege Plaintiff's citizenship. The amendment is to be filed by February 23, 2012.

IT IS SO FOUND AND RECOMMENDED.

DATED: Honolulu, Hawaii, February 16, 2012.



_____
Kevin S.C. Chang
United States Magistrate Judge

<u>MIYASATO, ET AL. V. HYATT, ET AL.</u>, CIVIL NO. 11-00716 JMS-KSC; FINDINGS AND RECOMMENDATION TO DENY PLAINTIFF DARREN MIYASATO'S MOTION FOR REMAND